**Jacob Johnstun, OSB No. 162146**, jjohnstun@johnstuninjurylaw.com
JOHNSTUN INJURY LAW LLC
1935 St. Helens Street, Suite A
St. Helens, Oregon 97051
Telephone:  (503) 410-3572
Facsimile:  (503) 389-1548
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **MICHELLE DERBY**, as legal guardian for **WILLIAM DERBY**, an individual, <br><br> **PLAINTIFF**, <br><br> v. <br><br> **COLUMBIA COUNTY**, an Oregon municipality, **CORRECT CARE SOLUTIONS, LLC d/b/a/ WELLPATH LLC, JEFFREY DICKERSON,** in his official capacity, **CHRIS HOOVER,** in his individual and official capacity, **JUSTIN HECHT,** in his individual and official capacity, **VIVIK SHAH, MD,** in his official capacity, **JULIE WEIGAND,** in her official capacity, **NANCY RONAN,** in her individual capacity, **COLUMBIA COMMUNITY MENTAL HEALTH,** an Oregon non-profit corporation, and **KAREN FORTLANDER,** in her individual capacity, <br><br> **DEFENDANTS**. | Case No. 3:21-cv-1030 <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> **CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983); AMERICANS WITH DISABILITIES ACT; REHABILITATION ACT VIOLATIONS (42 U.S.C. § 12191 et. Seq.; 29 U.S.C. § 794); OREGON TORT CLAIMS ACT – NEGLIGENCE (Or. Rev. Stat. § 30.260 et. Seq.); NEGLIGENCE** <br><br> **DEMAND FOR JURY TRIAL** |

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

## INTRODUCTION

1.

Plaintiff, Michelle Derby ("Ms. Derby"), as legal guardian for William Derby ("Mr. Derby", by and through her attorney, Jacob Johnstun, files this Complaint and Demand for Jury Trial against Columbia County, Correct Care Solutions LLC d/b/a Wellpath LLC ("CCS"), Jeffrey Dickerson ("Sheriff Dickerson"), Vivek Shah, MD ("Dr. Shah"), Julie Weigand ("Weigand"), Nancy Ronan ("Ronan"), and Columbia Community Mental Health ("CCMH") (collectively "Defendants") for Civil Rights Violations (42 U.S.C. § 1983), Americans With Disabilities Act; Rehabilitation Act Violations (42 U.S.C. § 12191 et. seq.; 29 U.S.C. § 794) Oregon Tort Claims Act – Negligence (Or. Rev. Stat. § 30.260 et. seq.) and related State claims. Ms. Derby alleges on information and belief as follows:

### NATURE OF THE CASE

2.

This is a case about the inhumane treatment of mentally ill inmates in the Columbia County Jail ("Jail") administered by the Columbia County Sheriff's Office.  Despite the widespread understanding that mentally ill people make up a substantial portion of its inmate population, Columbia County failed to establish adequate systems and policies to provide for the basic welfare of mentally ill inmates.  As a result, mentally ill inmates are denied humane treatment because of their mental illness.  They frequently do not receive adequate nutrition, basic hygiene accommodations, medication, time out of their cells, or access to outside visits.

Columbia County also failed to adequately provide mental health care to inmates at the Jail.  The Jail chose to contract with Correct Care Solutions ("CCS") to provide medical services to inmates.  To maximize profits, CCS chose not to provide adequate mental health services.

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

Columbia County and the Jail failed to properly train corrections deputies how to interact with and attend to mentally ill inmates. The result is that mentally ill inmates are punished for behaviors that are nothing more than symptoms of mental illness. These punishments include the use of tasers, stun shields, and even dog bites. For these reasons mentally ill inmates, including Mr. Derby, are subjected to conditions that amount to torture.

Michelle Derby is the biological sister and guardian of William Derby, a mentally ill individual once incarcerated at the Jail. When he was incarcerated in February 2017, Mr. Derby entered as a healthy, functional person who could appropriately interact with others. When Mr. Derby left the Jail on April 4, 2017, he had lost a dangerous amount of weight, was not vocal, did not make eye contact, had no energy, and looked to be in very poor health. On April 8, 2017, Mr. Derby collapsed in his parents' home, and was taken by ambulance to Legacy Good Samaritan Medical Center. Medical staff observed that Mr. Derby only minimally answered questions, and with significant delay. They observed that Mr. Derby appeared anxious, scared, and often did not answer questions at all. A drug screen was completed and found to be negative. The hospital's final diagnosis included "Problems related to release from prison," and "electrolyte abnormality." A five-day mental health hold was placed on Mr. Derby due to an inability to care for himself, and being both a suicide and flight risk.

Mr. Derby was sent to Unity Center for Behavorial Health for his mental health hold. Despite Ms. Derby's pleas, Mr. Derby's caseworker Karen Fortlander (Ms. Fortlander) recommended that Mr. Derby be released, which he was shortly thereafter.

Days later on April 16, 2017, while under the delusional belief that his mother was an imposter who had killed his real mother, Mr. Derby slashed his mother Janice Derby's throat at least two times while she was preparing Easter dinner in her kitchen. Mr. Derby was arrested

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

later that day for attempted murder, and entered the Jail in a catatonic psychosis, a result of severe mental health neglect systemic at the Jail.

Mr. Derby suffered additional mental health neglect by the Jail and attempted suicide by the use of a razor provided by correctional officers in May 2017.  Columbia County fought every effort to have Mr. Derby sent to the Oregon State Hospital.  Once ordered to do so, Mr. Derby was sent to the Oregon State Hospital where he was properly treated and medicated.  Once sent back to the Jail his condition immediately began to deteriorate again.  Further efforts to have him sent back to the Oregon State Hospital were fought by Columbia County.  On October 31, 2017, Mr. Derby entered a plea of Guilty Except for Insanity to the charge of Assault in the Second Degree.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over Ms. Derby's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over Ms. Derby's claims of violation of the Americans with Disabilities Act because the causes of action arise under that Act.  This Court has jurisdiction over Ms. Derby's pendent state law claims under 28 U.S.C. § 1367.

Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Derby's claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

///

Page 4 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

## PROCEDURAL REQUIREMENTS

### 4.

All administrative prerequisites to filing this action have been timely filed.  The statute of limitations for this action was tolled under ORS § 12.160(3) due to Mr. Derby's disabling mental condition.  In addition, tort notice was properly given to Columbia County defendants under the Oregon Tort Claims Act, ORS § 30.275.

## PARTIES

### 5.

At all material times, plaintiff Michelle Derby was a Washington resident.  She is the biological sister of William Derby.  On October 16, 2017, the Honorable Ted E. Grove appointed Ms. Derby as the legal guardian for Mr. Derby based on Mr. Derby's lack of competence due to his mental illness.

### 6.

At all material times, defendant Columbia County ("County") was the Oregon public agency who owns and operates the Jail, and employs the people who work there.  County contracted with Correct Care Solutions to provide medical services at the Jail.

### 7.

Defendants Chris Hoover ("Officer Hoover") and Justin Hecht ("Officer Hecht"), at all material times, were probation officers employed by County.

### 8.

At all material times, Correct Care Solutions d/b/a/ Wellpath LLC ("CCS") was a Tennessee based for profit corporation.  CCS contracts with jails and prisons to provide medical

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

services within institutions.  CCS contracted with Columbia County to provide medical services at the Jail.

9.

At all material times, defendant Jeffrey Dickerson ("Sheriff Dickerson") was the sheriff of Columbia County.  In that role, he was the person in charge of operating the Jail.  He had a non-delegable duty to provide for the basic medical care of inmates at the Jail.  He is sued in his official capacity.

10.

At all material times, defendant Vivek Shah, MD ("Dr. Shah"), was the medical director for CCS covering the Jail.  As medical director, Dr. Shah was the doctor ultimately responsible for the provision of medical care to inmates at the Jail.  He is sued in his official capacity.

11.

At all material times, defendant Julie Weigand ("Ms. Weigand") was the behavioral health manager for CCS covering the Jail.  As behavior health manager, Ms. Weigand was the mental health professional responsible for ensuring that inmates of the Jail received adequate mental health care.  She is sued in her official capacity.

12.

At all material times, defendant Nancy Ronan ("Ms. Ronan") was the nurse employed by CCS working full time in the Jail.  In that role, Ms. Ronan was the person on the ground responsible for providing medical care to inmates at the Jail.  She is sued in her individual capacity.

///

///

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

13.

At all times material hereto, defendant Columbia Community Mental Health ("CCMH") was a non-profit organization located within Columbia County.  CCMH contracted with the County and Jail to provide mental health services to inmates and people on probation.

14.

At all material times, defendant Karen Fortlander ("Ms. Fortlander") was a case manager employed by CCMH, and was Mr. Derby's assigned case worker.  She is sued in her individual capacity.

**FACTUAL ALLEGATIONS**

15.

Mr. Derby has been medically diagnosed with schizophrenia, adjustment disorder, anxiety, and depression.  Prior to the events of this lawsuit, Mr. Derby mostly lived in a trailer on his parents' property in Rainier, Oregon.

16.

On August 17, 2015, Mr. Derby was convicted of possession of methamphetamine and sentenced to 18 months of supervised probation.  A mandatory check-in with Mr. Derby's probation officer, Officer Hecht, was scheduled for August 26, 2015.  Mr. Derby failed to report in, but called and left a voicemail that same day for Officer Hecht to say that he lacked transportation.  Officer Hecht issued a warrant for Mr. Derby's arrest.

17.

On August 30, 2015, Mr. Derby was detained by law enforcement and sentenced to 22 days in custody.  On October 20, 2015, Officer Hecht filed a violation report requesting a warrant and that Mr. Derby be detained for failing to appear for a mandatory check-in.  On

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

December 15, 2015, Mr. Derby was found to be in violation of probation and was sentenced to 60 days in custody at the Columbia County Jail and probation was extended to 12 months.

18.

On February 3, 2016, Officer Hoover saw Mr. Derby in a grocery store in St. Helens, Oregon, and observed that Mr. Derby possessed two alcoholic beverages.  Mr. Derby had also failed to report to a mandatory check-in that day.  Mr. Derby made "messianic" statements and claimed that his family had been murdered.  Officer Hoover had Mr. Derby arrested for a probation violation.  Mr. Derby said that he would hang himself with a bedsheet.  That same day on February 3, 2016, while Mr. Derby was being processed into the Jail, he reported he had been sexually assaulted by another inmate during his last stay at the jail.

19.

While in the jail over approximately the next seven and a half months, Mr. Derby endured solitary confinement.  He was permitted out of his cell for only very limited time periods.  This was contrary to well accepted standards for mentally ill inmates with Mr. Derby's diagnosis, namely, schizophrenia.  This had severe negative impacts on Mr. Derby's mental health.

20.

While in the jail over approximately the next seven and a half months, Mr. Derby was denied adequate medication and mental health services.  This, combined with solitary confinement, had severe negative impacts on Mr. Derby's mental health.

21.

While in the jail over approximately the next seven and a half months, Mr. Derby was repeatedly punished for nothing more than the natural symptoms of an unmedicated, untreated

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

schizophrenic man forced into solitary confinement.  Such punishments included, but were not limited to,

-    denial of visitation rights;

-    denial of access to programs like Alcoholics Anonymous;

-    denial of access to commissary;

-    revocation of the extremely limited time Mr. Derby was permitted out of his cell;

-    denial of adequate food; and

-    denial of adequate warmth.

22.

In February 2016, Mr. Derby wrote to his mother Janice Derby asking for her help to get him on a treatment plan.  He expressed disappointment that he did not have a cell mate.  He also said he would get very hungry in his cell, and that "It's very cold in here.  I'm lonely and hungry.  Also in the hole again.  Needing out."

23.

On February 18, 2016, Mr. Derby asked an officer for another blanket.  The officer refused, stating two blankets were enough.

24.

On March 5, 2016, during the limited time Mr. Derby was permitted out of his cell, he was observed using the mop to clean the walls in the pod.  The officer present told Mr. Derby to stop.  Due to the effects of his mental illness, Mr. Derby believed there was blood all over the walls and that he needed to take care of it, and he said this to the officer.  The officer asked him to stop again.  Mr. Derby started to yell at the officer.  The officer ordered Mr. Derby back to his cell.

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

25.

In March 2016, Mr. Derby wrote to his mother that he was very cold, and "conditions unbearable to the warmth of fingers." He further wrote that he "went into hypothermic shock."

26.

On April 6, 2016, Mr. Derby's probation was revoked, and he was sentenced to one year in custody at the Jail.

27.

On April 7, 2016, another inmate was heard verbally abusing Mr. Derby. The next day that same inmate antagonized Mr. Derby again. Mr. Derby became upset and started to yell and shout. Officers then disciplined Mr. Derby by moving him to a more restrictive cell.

28.

On April 10, 2016, another inmate wrote to Mr. Derby and said "Dear Derby, I sincerely miss the hour and a half time out we had in C Pod together. You may not know it but I have seen you "acting up" several times when I was in A Pod and when Deputy Townsend walked me into C Pod and introduced me to you, "… this is your new out-time partner," I said to myself, "Oh this is going to be a nightmare." But I soon found out that you are a very nice and pleasant person to be with and talk to… Also, you have to be careful and not let inmates or deputies goat you into doing more acting up than necessary for the moment, remember to just say in your head "cool it, cool it, cool it.""

29.

On June 8, 2016, Mr. Derby was sent a letter from a second inmate who wrote "I still haven't forgot you friend… Now I still have the list of treatment centers you gave me and am going to get you into treatment."

Page 10 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

30.

On June 16, 2016, a third inmate wrote Mr. Derby "I gotta tell you if you really want to start your drug program you need to grow up and stop being stubborn.  Stop yelling at anyone, not just #1.  Talk to the guards and explain that you are really trying to straighten your act up and be a responsible and fair adult that deserves a bed in the drug program.  Don't pussy foot around and expect them to guess what your plan is.  Tell them and prove it with quiet days and no door kicking!  Quit laying around being mad and sad because you think you should already be in program.  Your attitude combined with yelling and door kicking is why you're not.  I like you #5 so don't think I'm pissed or being mean.  I'm giving you a straight forward plan that will work get you in the program.  Ok bud?"

31.

On July 20, 2016, Mr. Derby was heard yelling profanities sporadically throughout the night.  An officer attempted to reason with Mr. Derby without success.  That same officer recorded "Please use caution when dealing with Inmate Derby as his behavior is becoming unpredictable."

32.

On July 29, 2016, a fourth inmate wrote to Mr. Derby "I hope you're not weirding out in there or getting walked on too much…"

33.

On August 29, 2016 at about 4:15am, Mr. Derby woke up believing that he was coughing up blood.  He pressed the intercom button and amidst his hysterical yelling, officers could make out that Mr. Derby believed that guards had allowed someone into his cell to jump on him.  These actions were due to Mr. Derby mental illness.  An officer went to Mr. Derby's cell to

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

check on him.  Mr. Derby maintained that he was spitting up blood, and was verbally

disrespectful towards the officer because he believed the guards were to blame.  The guard

checked Mr. Derby's mouth and saw no blood.  Mr. Derby was later disciplined for the incident

and placed on lockdown status for five days, to begin on September 5, 2016.

34.

On September 13, 2016, eight days later, Mr. Derby was still on lockdown status.  Mr.

Derby requested that he be able to purchase commissary items because he was hungry.  Guards

responded that due to his lockdown status, he would not be permitted.  Mr. Derby became

verbally aggressive and yelled at officers.  In response, commissary privileges were revoked for

an additional thirty days.

35.

On September 21, 2016, Mr. Derby was released from custody and reported directly to

Officer Hoover.  Officer Hoover explained that Mr. Derby had an additional 18 months of

probation to serve.  Mr. Derby requested to be transferred to a different probation officer.

Officer Hoover told Mr. Derby that he could file a request but it would be denied.

36.

On September 22, 2016, Mr. Derby's father Michael Derby went to the probation office

to voice frustration to Officer Hoover that his son had been in isolation at the Jail for over 7

months.  Michael Derby said this caused his son's mental condition to drastically decline.

37.

On October 12, 2016, Officer Hoover was contacted by Klamath Falls police who said

Mr. Derby was in their community, was obviously mentally ill, and spent most of his time at

local businesses.  Klamath Falls police stated that Mr. Derby had been arrested on disorderly

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

conduct.  Officer Hoover asked Klamath falls police to detain Mr. Derby for failing to report his change of address.

38.

On October 23, 2016, Officer Hoover was notified that Mr. Derby was being released from the Klamath Falls Jail.  That same day, Officer Hoover requested a warrant for Mr. Derby's arrest for failing to report a change of address.

39.

On October 24, 2016, Officer Hoover was contacted by Mr. Derby's sister, Michelle Derby.  Ms. Derby asked if Officer Hoover could allow Mr. Derby to stay in Klamath Falls because she was helping him get mental health care there.  On October 26, Officer Hoover was contacted by a newly retained attorney of Mr. Derby's, Sammy Sanchez ("Ms. Sanchez").  Ms. Sanchez asked if Officer Hoover could withdraw the warrant so that Mr. Derby could attend a residential treatment facility in Klamath Falls, and hold off on reissuing it at least until a court hearing on January 23, 2017.  Officer Hoover agreed, and said that he would withhold from issuing any warrants as long as he continued to receive regular updates.  Officer Hoover then explained his reasoning in an email to an assistant district attorney "I am open to having the warrant lifted so he is able to [redacted] because that is truly what he needs."

40.

Officer Hoover received regular updates from Ms. Sanchez and reaffirmed on December 19, 2016 to her that he would hold off on issuing any warrants as long as he continued to receive updates.

///

///

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

41.

On January 19, 2017, Officer Hoover sent Ms. Sanchez an email requesting another update. That same day, he recorded in his case notes that if no information was obtained by January 23, 2017 (the day of Mr. Derby's court date in Klamath Falls), he would request a warrant. He did not communicate this deadline to Ms. Sanchez.

42.

On January 24, 2017, just before 12:30 pm, Ms. Sanchez replied to Officer Hoover's email. She stated that Mr. Derby appeared in court the previous day with her. Ms. Sanchez explained there was not a resolution at court that day, but she expected there to be one at the next hearing. Ms. Sanchez also said that due to a conflict of interest, Mr. Derby would be represented by a different attorney going forward. Five minutes later, Officer Hoover responded "Thank you!"

43.

Notwithstanding this update, Officer Hoover requested a warrant for Mr. Derby's arrest that same day. This violated the understanding between himself and Ms. Sanchez. At no time did Officer Hoover communicate with Ms. Sanchez about his issuing of the warrant. In his request for an arrest warrant, titled "Notice of Violation," Officer Hoover alleged a warrant for Mr. Derby's arrest was needed because "Derby changed residence without prior permission" and "Derby failed to report as directed." Officer Hoover made false representations to the Columbia County Circuit Court in the following statement:

> "This writer attempted to contact Derby to engage him with probation but he did
>
> not report to the office after 9/23/2016. On 10/12/2016, this writer spoke with
>
> Officer Hutcheson of Klamath Falls… he reported that Derby had been, ng [sic]

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

in their town for at least a week and that Derby was being arrested for the crime

of disorderly conduct… On 10/26/16, this writer was then contacted by an

attorney by the name of Sammy Sanchez requesting the warrant be lifted so

Derby would be able to secure and attend a residential treatment facility in

Klamath Falls. This writer contacted the Columbia County District Attorney's

Office and requested the warrant be temporarily recalled which was approved and

signed by Honorable Judge Callahan on 11/06/16.  Derby's attorney requested no

warrant be requested until after Derby's court date on 1/23/17. This writer made

numerous attempts to contact individuals associated with Derby's case including

his attorney, treatment providers, and his parents (list of attempted contacts shall

be brought to court). This writer contacted treatment providers in Klamath Falls

on Derby's behalf and on 1/19/17 it was confirmed with a staff member at Best

Care that Derby failed to follow through as directed and was not in treatment. On

1/24/17, Derby's attorney Sammy Sanchez sent an email reporting that Derby

went to Court on 1/23/17 but no resolution was met and Derby was assigned a

different attorney."

The false representations of this statement included 1) claiming the understanding

between himself and Ms. Sanchez was merely to hold off on issuing a warrant until after the

1/23/17 hearing, when in reality that understanding was to hold off on issuing a warrant as long

as Officer Hoover received regular updates and Mr. Derby actively sought treatment; 2) falsely

claiming numerous unanswered contact attempts; 3) claiming that Mr. Derby had not followed

through with treatment, when actually Mr. Derby had only been temporarily turned away from

the full-time treatment facility due to scabies and a lack of availability; 4) claiming Mr. Derby

**Johnstun Injury Law LLC**    Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

had changed his residence without prior permission, when in fact Ms. Derby reported Mr.

Derby's location to Officer Hoover, and Officer Hoover gave permission for Mr. Derby to seek

full-time treatment in Klamath Falls; and 5) claiming that Mr. Derby had failed to report as

directed, when Ms. Derby and Ms. Sanchez were in regular contact with Officer Hoover on his

behalf.

44.

On February 3, 2017 Mr. Derby was detained by law enforcement in Klamath Falls on a

"routine subject stop."  Mr. Derby was taken to Klamath County Jail pursuant to the warrant

requested by Officer Hoover.

45.

At Mr. Derby's sentencing hearing on February 15, 2017, Honorable Judge Jennifer

Grant of the Columbia County Circuit Court sentenced Mr. Derby to 90 days in jail, but that time

was to be furloughed as soon as a bed in a treatment facility could be obtained.  Judge Grant

suggested to county officers that they attempt to place Mr. Derby in a treatment facility within

two weeks.  Judge Grant further stated that once Mr. Derby was in a treatment program in a

different county, he would not need to come back to the Columbia County Court or Jail.

46.

On February 9, 2017, just two days after Mr. Derby's admission into the jail, a jail nurse

observed the following:

> "Good eye contact w/ appropriate expressions.  More coherent than past
>
> encounters.  Speech in normal tone.  Mood congruent.  No bizarre behavior
>
> observed.  He sees no need for MH f/u 2/9/2017."

///

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

47.

By February 25, 2017, Ms. Ronan and jail nursing staff discontinued Mr. Derby's

medications that had been prescribed to treat psychosis. Though this action was apparently taken

because Mr. Derby had refused the medication four times in a row, Ms. Ronan and nursing staff

failed to make even modest efforts to persuade Mr. Derby to take them. In addition, Ms. Ronan

and nursing staff failed to obtain physician approval to discontinue the medications, and they did

not alert mental health workers.

48.

On March 6, 2017, Michael, Janice, and Michelle Derby went to the probation office to

speak with Officer Hoover. They were extremely worried because Mr. Derby's mental condition

was declining in the jail. They said that Mr. Derby was not even having visitations with them,

which was very unlike him.

49.

On March 9, 2017, Officer Hecht visited with Mr. Derby inside the jail. He told Mr.

Derby that if he were to go to a treatment facility and "screw up," he would be forced to go

directly back to the Jail. This was a blatantly false statement, and was in direct conflict with

what Judge Grant had said at the sentencing hearing. After this meeting with Mr. Derby, Officer

Hecht ceased all efforts to have Mr. Derby transferred to a treatment facility.

50.

From March 10, 2017 through March 21, 2017, Mr. Derby went on a hunger strike, and

missed 26 out of 36 meals. Correctional officers, medical and mental health personnel failed

entirely to intervene, and took no action of any kind. When asked why no action was taken at a

later deposition, the current sheriff of Columbia County Sheriff Pixley said "From just a cursory

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

look, it looks like he did not go more than 72 hours without a meal.  And unless stated that he was on a hunger strike while refusing meals, that would not trigger hunger strike protocol."

51.

In a handwritten nurse's note dated March 23, 2017 (the only other known nurse's note created during this incarceration period) recorded:

"F/u because has refused meds and was not eating until 3/22/17 for a few days. Per CO in control, he is now accepting meals.  Refused to see MH today, 3/23/17, will try 3/27/17 when next on site.  3/27/2017 – denies wanting to harm himself. Not wanting to discuss reason for not eating.  Fixed gaze w/ pinpoint pupils. Expressionless.  Little conversation.  Not discussed what he is thinking.  Evasive. Place on special needs."

There are no records to indicate that Mr. Derby was placed on special needs.

52.

Many times during Mr. Derby's incarceration from 2015 through 2017, Mr. Derby's parents and sister attempted to assist him in gaining access to mental health treatment.  These efforts were repeatedly rebuffed by the Jail, nursing staff, probation officers, and CCMH.  Even after Judge Grant ordered officers to quickly transfer Mr. Derby from the jail to a treatment facility, they failed to do so, and forced Mr. Derby to serve his full 90-day sentence.

53.

In either March or April 2017, a meeting was held between jail staff and members of the Columbia County District Attorney's office.  There, Mr. Derby's fragile condition was discussed, and opposition was voiced against releasing Mr. Derby directly into the public for this

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

reason.  Deputy Weaver responded they intended to release Mr. Derby into the public, and that if anything were to happen, the Jail would accept responsibility.

54.

At some point prior to Mr. Derby's release from incarceration, Michael, Janice, and Michelle Derby asked Officer Hoover if Mr. Derby could be considered for transitional housing. Officer Hoover replied that Mr. Derby was too dangerous to himself and others to be considered.

55.

On April 4, 2017, Mr. Derby was released from jail.  Michael, Janice, and Michelle Derby observed that Mr. Derby did not look himself.  He had lost a significant amount of weight, looked malnourished, was not vocal, had no energy, and appeared to be in very poor health.

56.

Four days later, on April 8, 2017, Mr. Derby collapsed in his parents' home.  He was taken to Legacy Good Samaritan Medical Center by ambulance.  Janice Derby said to medical staff Mr. Derby "was not himself when he came out," and that he was acting differently.  Janice Derby said that Mr. Derby had been talking about suicide, that he wanted to go to heaven with his family, was not taking care of himself, was not eating, and had poor energy.  Mr. Derby admitted to medical staff that he had been thinking about suicide and that he was depressed.  Mr. Derby's parents reported to medical staff he had lost a significant amount of weight in jail, which they estimated to be approximately 40 pounds.  Mr. Derby was observed by medical staff to only minimally answer questions, and with a significant delay.  They observed that Mr. Derby appeared anxious, scared, and often did not answer questions at all.  A drug screen was completed and found to be negative.

///

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

57.

Dr. Jeffrey Meyerhoff of Legacy Good Samaritan Medical Center recommended that Mr.

Derby be admitted to Unity Center for Behavioral Health ("Unity") for five days due to an

inability to care for himself, and being both a suicide and flight risk.  Michael, Janice, and

Michelle Derby were very receptive to this plan.  Mr. Derby was eventually transferred to Dr.

Allison Hadley at Unity who accepted Mr. Derby for evaluation.

58.

Unity informed Michael, Janice, and Michelle Derby they would work with CCMH to

come up with a plan for Mr. Derby.  Ms. Derby went to CCMH to discuss Mr. Derby's care, and

was directed to Karen Fortlander, a case manager there.  Ms. Fortlander initially told Ms. Derby

she was considering having Mr. Derby released from Unity before the five-day hold had expired.

Ms. Derby voiced opposition to this plan, and pleaded with Ms. Fortlander that Mr. Derby

needed to stay where he was for the time being, as Dr. Meyerhoff had recommended.  Ms. Derby

said if Mr. Derby was released at that time, "my brother will die.  He will die.  He is not doing

well at all."  Ms. Fortlander responded she could recommend that Mr. Derby stay at Unity for a

total of 14 days.  Ms. Derby thanked Ms. Fortlander.

59.

Later that same day, Ms. Fortlander called Ms. Derby to say she had seen Mr. Derby, he

appeared to be doing very well, and she recommended he be released the next day.  Ms. Derby

responded she was very disappointed by this, and did not understand why Mr. Derby was being

released after only two days at Unity when the doctor had recommended five days.  Ms. Derby

then handed the phone to her father, Michael Derby.  Michael Derby was very upset, and said

that all last week, Mr. Derby had been threatening to kill himself, and so Ms. Fortlander's

Page 20 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

determination had to be mistaken.  Michael Derby asked Ms. Fortlander "If something happens, who is responsible?"  Ms. Fortlander said she could not answer that.  Ms. Fortlander stated she would arrange for Mr. Derby to be picked up by a taxi the next day.

60.

Shortly after when Ms. Fortlander recommended that Mr. Derby be released from Unity's facility, Dr. Hadley approved a patient discharge for him.

61.

Michael, Janice, and Michelle Derby then drove to Unity to speak with staff, and asked them if they could keep Mr. Derby longer.  Unity staff replied there was nothing they could do, and that the decision was not theirs.

62.

Michael and Janice Derby drove to Unity to pick Mr. Derby up on April 12, 2017.  They were informed that Unity had already released Mr. Derby and that no taxi had been called.  Eventually, Michael and Janice Derby found Mr. Derby wandering the streets of Portland.  The next day, they took Mr. Derby to an appointment at CCMH.  When they were leaving the appointment in their vehicle, Mr. Derby jumped out of the moving vehicle and ran across Highway 30 through an intersection.

63.

Four days later on April 16, 2017, Janice Derby was preparing Easter dinner in her kitchen.  Michael Derby was in the basement.  Mr. Derby walked into the kitchen with his mother.  Believing she was not in fact his mother, but rather an imposter, Mr. Derby grabbed a butcher knife and cut his mother's throat no less than two times.  As Janice Derby struggled to keep Mr. Derby from cutting her again, she screamed for her husband to help her.  Michael

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

Derby ran up the stairs and grabbed Mr. Derby off Janice Derby. Michael Derby yelled at his wife to lock herself in the bedroom and call 911. Bleeding profusely, Janice Derby did so.

64.

When he was convinced his wife was safe, Michael Derby managed to separate himself from Mr. Derby and ran to the bedroom where Janice Derby was hiding, and locked the door. Michael Derby pointed a firearm at the bedroom door, preparing himself to shoot his own son if Mr. Derby broke through the door. Eventually, law enforcement arrived. Mr. Derby was found to be sitting quietly downstairs, and was taken into custody without incident.

65.

On May 7, 2017, while back in the Jail, officers provided Mr. Derby with a razor blade. Mr. Derby used the razor blade later that day in an attempt to end his life, and cut his own throat. When asked by jail staff why he did this, Mr. Derby replied "I wanted to go to heaven." Jail and medical staff failed to notify Mr. Derby's family, the courts, or his attorney of this suicide attempt. Officers soon thereafter placed Mr. Derby in a suicide jacket and placed him in isolation. No attempt was made to place Mr. Derby in a psychiatric facility.

66.

Mr. Derby's mental health continued to deteriorate until he was treated and medicated by the Oregon State Hospital pursuant to a court order forcing defendants to have Mr. Derby sent to the Oregon State Hospital. Upon his return to the Columbia County Jail, his mental health began to deteriorate again.

67.

At no time did Defendants attempt to have psychiatric intervention by CCMH or any other facility. Defendants had to be forced by the courts to provide any mental health treatment

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

to Mr. Derby.  The Jail's approach with Mr. Derby, and all other inmates suffering from severe

mental illness, is to hold them in F-Pod.  If the inmate does not immediately respond when a jail

deputy delivers food, medication, comes to transport for a visit, or comes to allow the inmate out

of their cell, the deputy considers that a "refusal" and the access to these basic necessities of life

is denied.  There is no accommodation or consideration given to the fact that the person may be

unable to respond in the way required as a direct result of their mental illness.

68.

This culture and lack of adequate training is further evidenced by the Jail's pattern of

physically abusing mentally ill inmates who do not immediate comply with commands by using

tasers, stun shields, physical blows, and even dog attacks.  It is believed that Mr. Derby was also

a victim of the Jail's pattern of physical abuse.

69.

As a direct result of defendants' serious maltreatment of Mr. Derby, an otherwise gentle

human being with mental illness's state of mind deteriorated so much that he attempted to end

both his own and his mother's lives, was charged with attempted murder, and was forced to take

a guilty plea except for insanity.  Mr. Derby's freedom has been deprived from him ever since,

and he will always be looked upon as a danger to others because of defendants' actions.

**FIRST CLAIM FOR RELIEF**

**(42 U.S.C. § 1983 – Eighth And Fourteenth Amendments – Cruel And Unusual
Punishment)**

70.

Section 1983, a part of the Civil Rights Act of 1871, prohibits any person acting under

color of state law to deprive any United States citizen of the rights, privileges and immunities

secured by the Constitution of the United States.  Among the rights protected by this section is

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

the right under the Eighth and Fourteenth Amendments of the Constitution to be free from the infliction of cruel and unusual punishments.

I.      **Count 1: Deliberate Indifference to Serious Medical Need:  Monell Liability – Defendant Columbia County and Jeffrey Dickerson**

71.

Defendants County and Sheriff Dickerson engaged in and supported an unofficial custom and often repeated practice, under the color of law, of failing to assist and be deliberately indifferent towards inmates suffering from a serious medical need.

72.

These customs and practices are apparent from many other incidents with inmates in their custody, including:

a) Ignoring desperate cries for emergency medical attention from inmates, leading to the inmate's death;

b) Ushering seriously injured inmates onto the street late at night rather than facilitate a medical transfer, despite the inmates having no reliable transportation and there being no hospitals within 30 miles;

c) Refusing to stop inmates from seriously harming or killing themselves; and

d) Refusing to provide inmates with properly sized catheters who require them to drain their bladder, causing a high risk of a burst bladder.

73.

The toxic customs, practices, and culture of defendants creates enormous risk to any inmate in their custody who suffers from a serious medical condition.  The need for more or different training was so obvious, and the inadequacy so likely to result in the violations of

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

constitutional rights as to amount to a policy of deliberate indifference to citizens' constitutional rights.

74.

It was foreseeable that the customs, practices, and culture of defendants would cause great harm to Mr. Derby, and that foreseeable risk was realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if defendants respected Mr. Derby's constitutional rights, thus preventing his mental condition from deteriorating to the point where he could be charged with attempted murder.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## II.    Count 2: Deliberate Indifference Towards the Mentally Ill:  Monell Liability – Defendant Columbia County and Jeffrey Dickerson

75.

Defendants County and Sheriff Dickerson engaged in and supported an unofficial custom and often repeated practice, under the color of law, of classifying what they deemed to be the irregular behaviors of mentally ill inmates as willful defiance of correctional officer authority, punishing inmates for being mentally ill, and deliberately failing to assist or facilitate access to mental health services.

76.

These customs and practices are apparent from many other incidents with inmates in their custody, including:

a)   Ordering dogs to attack mentally ill inmates as a punitive measure for speaking disrespectfully, even though the inmate is locked alone in his cell;

Page 25 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

b)  Refusing to immediately stop mentally ill inmates from seriously harming or killing themselves;

c)  Providing mentally ill inmates with razor blades, though their unstable mental state is plain and obvious;

d)  Denying meaningful access to mental health services;

e)  Failing to adequately address claims of sexual assault by mentally ill inmates;

f)  Placing mentally ill inmates into solitary confinement for excessive periods of time; and

g)  Punishing mentally ill inmates for irregular and erratic behavior, despite that behavior being a natural consequence of being untreated, unmedicated, and isolated, through imposing harsher isolation restrictions.

77.

The toxic customs, practices, and culture of defendants creates enormous risk to any inmate in their custody who suffers from a mental illness.  The need for more or different training was so obvious, and the inadequacy so likely to result in the violations of constitutional rights as to amount to a policy of deliberate indifference to citizens' constitutional rights.

78.

It was foreseeable that the customs, practices, and culture of defendants would cause great harm to Mr. Derby, and that foreseeable risk was realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if defendants respected Mr. Derby's constitutional rights, thus preventing his mental condition from deteriorating to the point where he could be charged with attempted murder.

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

III.    **Count 3: Deliberate Indifference to Serious Medical Need: Supervisor Liability –
Defendants Correct Care Solutions, LLC, Vivik Shah, MD, and Julie Weigand**

79.

Defendants are aware of the fact that people with serious mental illnesses make up a

substantial portion of local jail inmates.

80.

Defendants are aware of the fact that people with serious mental illnesses will often deny

that they suffer from any mental illness.

81.

Defendants are aware of the fact that people with serious mental illnesses will

sometimes refuse to accept necessary medication to treat their illnesses.

82.

Defendants are aware of the fact that people with psychotic disorders whose

symptoms are not being controlled by anti-psychotic medications will not act rationally, will

sometimes become unable to care for themselves, and will sometimes harm themselves or other

people.

83.

Defendants collectively decided not to implement a mental health screening instrument

upon intake into the Jail that includes a review of available medical records in order to identify

new inmates with serious medical/mental health needs that must be addressed.

84.

Defendants collectively decided not to have procedures for the administration of

necessary anti-psychotic medications that account for the fact that someone suffering from these

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

diseases may offer some resistance to medication.

85.

Defendants collectively decided not to have qualified mental health professionals on staff at the Jail who could counsel inmates with serious mental health needs about the dangers of not taking medication and their options with respect to medication side effects.

86.

Though defendants have formal policy allowing for the transfer of inmates experiencing mental health crises to a mental health facility, defendants have collectively decided to implement that policy so rarely, and offer such resistance to it in practice, to render the policy meaningless despite desperate need by inmates.

87.

Defendants are well aware that correctional officers at the Jail employ measures of discipline and punishment that are egregiously harmful to inmates suffering from mental illness, including prolonged isolation.  Defendants are also well aware the discipline and punishment inflicted upon mentally ill inmates at the Jail are very likely to cause the inmates' mental health to deteriorate even further, which leads to more outbursts before more discipline and punishment.  And yet despite this knowledge, any mental health intervention by defendants is often limited to an infrequent, very brief face-to-face encounter that concludes with no meaningful treatment or changes being offered, no matter how dire the inmates' situation, before the inmates are ushered back to their cells for further isolation.

88.

Defendants made the decisions referenced above in order to maximize their profits.

///

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

89.

The decisions referenced above created a serious danger that inmates suffering from serious mental illnesses would suffer severe emotional trauma and physical health impairment. Defendants were aware of this danger and chose to ignore it.

90.

The decisions of defendants created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if defendants had not engaged in the conduct described in the immediately preceding paragraphs.

91.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

IV.    **Count 4: Excessive Penalties and Punishment, Deliberate Indifference Towards the Mentally Ill, and Deliberate Indifference of Serious Medical Need: Defendant Chris Hoover**

92.

As Mr. Derby's probation officer, Officer Hoover was aware that Mr. Derby is mentally ill, and admitted that treatment was what Mr. Derby truly needed. Yet, under color of law, Officer Hoover used his considerable power over Mr. Derby to excessively punish him for minor or non-existent probation violations. Officer Hoover's wrongful and unconstitutional actions included:

   a)    Upon finding Mr. Derby in possession of two alcoholic beverages after he had failed to report for a mandatory check-in that same day, Officer Hoover caused Mr. Derby to be arrested and advocated for what would be a seven and a half month period of

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

incarceration, despite Officer Hoover's knowledge that Mr. Derby was delusional and suffering from a mental break from reality (making messianic statements, believing his family had been murdered, etc.).

b) After agreeing with Mr. Derby's attorney to withhold from issuing a warrant for Mr. Derby's arrest as long as he continued to receive regular updates, Officer Hoover selected an arbitrary deadline for the next update without communicating the deadline to Mr. Derby's attorney.  The day after the deadline, Mr. Derby's attorney responded to Officer Hoover with an update.  Despite the fact that Officer Hoover had not yet issued a warrant, and that he had never communicated any deadlines, he proceeded to issue a warrant after he received an update.  He did not communicate the issuance of a warrant to Mr. Derby's attorney.

c) Making false claims to the Columbia County Circuit Court, including:

   i. Claiming the understanding between himself and Mr. Derby's attorney was merely to hold off on issuing a warrant until after the 1/23/17 hearing, when in reality that understanding was to hold off on issuing a warrant as long as Officer Hoover received regular updates and Mr. Derby actively sought treatment;

   ii. Claiming numerous unanswered contact attempts with Mr. Derby's family and attorney;

   iii. Claiming that Mr. Derby had not followed through with treatment, when actually Mr. Derby had only been temporarily turned away from the full-time treatment facility due to scabies and a lack of availability;

   iv. Claiming Mr. Derby had changed his residence without prior permission, when in fact Ms. Derby reported Mr. Derby's location to Officer Hoover, and Officer

Page 30 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

Hoover gave permission for Mr. Derby to seek full-time treatment in Klamath

Falls; and

v.    Claiming that Mr. Derby had failed to report as directed, when Ms. Derby and Mr.

Derby's attorney were in regular contact with Officer Hoover on his behalf.

d)    After Mr. Derby was arrested pursuant to Officer Hoover's warrant, failing to follow

Judge Grant's order to get Mr. Derby transferred out of the Jail and into a treatment

facility.

93.

Officer Hoover's actions created foreseeable risks to Mr. Derby that were realized in Mr.

Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's

suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon

his mother Janice Derby, which never would have happened if Officer Hoover had not engaged

in the conduct described in the immediately preceding paragraphs.

94.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

**V.    Count 5: Excessive Penalties and Punishment, Deliberate Indifference Towards
the Mentally Ill, and Deliberate Indifference of Serious Medical Need:
Defendant Justin Hecht**

95.

As Mr. Derby's probation officer, Officer Hecht was aware that Mr. Derby is mentally ill.

Yet, under color of law, Officer Hecht used his considerable power over Mr. Derby to disrupt

and frustrate any potential Mr. Derby had of getting out of the Jail and into a treatment facility.

Officer Hecht's wrongful and unconstitutional actions included:

**Johnstun Injury Law LLC**
Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

a)  On March 9, 2017, telling Mr. Derby that if he were to go to a treatment facility and "screw up," he would be forced to go directly back to the Jail, when Judge Grant specifically said at the sentencing hearing that Mr. Derby would not need to come back to Columbia County;

b)  By feeding Mr. Derby harmful misinformation, Officer Hecht directly caused Mr. Derby to feel his situation was hopeless, prompting Mr. Derby to go on a hunger strike; and

c)  Failing to follow Judge Grant's order to get Mr. Derby transferred out of the Jail and into a treatment facility.

96.

Officer Hecht's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if Officer Hecht had not engaged in the conduct described in the immediately preceding paragraph.

97.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## VI.    Count 6: Deliberate Indifference Towards the Mentally Ill, and Deliberate Indifference of Serious Medical Need: Defendant Nancy Ronan

98.

Ms. Ronan was the supervising nurse at the Jail during Mr. Derby's incarcerations, and under color of law took direct part in:

a)  Discontinuing Mr. Derby's medications designed to treat psychosis without physician approval;

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

b) Deliberately failing to make reasonable efforts to persuade Mr. Derby to take his mediation; and

c) Being personally aware of Mr. Derby's extreme weight loss, lack of food intake, and deteriorating mental state, and yet deliberately failing to implement a plan of any kind to stabilize his condition including notifying a physician or mental health services.

99.

Ms. Ronan's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if Ms. Ronan had not engaged in the conduct described in the immediately preceding paragraph.

100.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

**ALL COUNTS**

101.

Ms. Derby as legal guardian of Mr. Derby is entitled to economic and non-economic damages in an amount to be determined at trial and for Ms. Derby's attorney fees and costs pursuant to 42 U.S.C. § 1988.

///

///

///

///

///

**Johnstun Injury Law LLC**    Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

## SECOND CLAIM FOR RELIEF

## (42 U.S.C. § 12191 et. seq.; 29 U.S.C. § 794 – ADA and Rehabilitation Act Violations)

## (Against Columbia County Only)

102.

Columbia County is the recipient of federal funds and is therefore covered by Section 504's mandate, which requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services, and reasonably modify such facilities, services, and programs to accomplish this purpose.

103.

Columbia County, the Columbia County Sheriff's Office, and the Columbia County Jail are all public entities within the meaning of Title II of the ADA, and provide programs, services, or activities to the general public.

104.

At all times relevant to this action, Mr. Derby was a qualified individual within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the Columbia County Jail. Specifically, Mr. Derby suffered from a mental impairment that "substantially limits one or more major life activities," including but not limited to "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.

105.

The Jail provides housing, medical and mental health treatment, and work and educational programs to inmates, which comprise programs and services for Section 504 and Title II purposes.

Page 34 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

106.

Columbia County knew, or should have known, that Mr. Derby suffered from a
serious mental illness.

107.

Columbia County was deliberately indifferent in failing to provide Mr. Derby with
reasonable accommodations and other services related to his disability, and denied him the rights
and benefits accorded to other inmates, solely by reason of his disability, in violation of the ADA
in the following particulars:

a) The ADA requires that mentally ill inmates have access to adequate mental health care.
   Columbia County failed to provide basic medical and mental health care to Mr. Derby.
   Its policy of relying on the inmate to identify their own health issues fails to
   accommodate inmates with mental health problems that prevent them from identifying
   those issues.

b) The ADA prohibits punishing inmates solely by reason of their disability.  Columbia
   County punished Mr. Derby by putting him in prolonged isolation, denying his access to
   basic needs of food and warmth, denying his access to social visiting, and denying his
   companionship of fellow inmates solely by reason of his disability.

c) The ADA requires that mentally ill inmates have access to jail programs, work, and
   educational opportunities, all of which County denied to Mr. Derby.

108.

Columbia County failed to enforce appropriate policies and procedures to ensure the
provision of necessary accommodations, modifications, and/or services to inmates with serious
mental illnesses.

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

109.

Columbia County failed to train and supervise jail staff to provide necessary accommodations, modifications, services and/or physical access to inmates with serious mental illnesses.

110.

As a direct and proximate result of Columbia County's foregoing wrongful acts, Columbia County discriminated against Mr. Derby on the basis of his disability in violation of the Americans with Disabilities Act and Rehabilitation Act, causing him to suffer severe emotional trauma, physical health effects, and permanent damage to his mental health.

111.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial and for an award of attorney fees and costs pursuant to 42 U.S.C. § 12205.

### THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – Fourth Amendment – False Arrest)

### (Against Defendants Columbia County and Chris Hoover)

112.

The Fourth Amendment protects citizens from unreasonable searches and seizures. Through a materially false statement filed by Officer Hoover in January 2017 with the Columbia County Circuit Court, a warrant was issued for Mr. Derby's arrest and confinement without probable cause, and Columbia County did wrongfully confine Mr. Derby based on false information in its jail to the detriment of Mr. Derby's personal liberty.

///

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

113.

Ms. Derby as legal guardian of Mr. Derby is entitled to economic and non-economic damages in an amount to be determined at trial and for Ms. Derby's attorney fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### (Or. Rev. Stat. § 30.260 Et. Seq. – Oregon Tort Claims Act -- Negligence)

### (Against Defendant Columbia County)

114.

Defendant Columbia County owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  County breached its duty to Mr. Derby when it:

a)  Provided Mr. Derby with a razor blade on the day he attempted to end his life while incarcerated;

b)  Punished Mr. Derby for what were the effects of his mental illness while inside the Jail, including deprivation of social interaction, privileges, food, and warmth;

c)  Failed to provide Mr. Derby reasonable medical and/or mental health treatment, which was most egregious during Mr. Derby's hunger strike and after his suicide attempt;

d)  Failed to properly investigate Mr. Derby's claim of sexual assault while inside the Jail;

e)  Failed to train correctional officers reasonable and acceptable standards of how to interact with mentally ill inmates;

f)  Failed to implement policies, procedures, and customs necessary for the humane treatment of the mentally ill;

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

g)  Incarcerated Mr. Derby for over seven and a half months starting in February 2016 based on Mr. Hoover's representations of probation violations, when these violations were due to Mr. Derby's mental illness;

h)  Incarcerated Mr. Derby in January 2017 based on Mr. Hoover's representations of probation violations, which were false;

i)  Failed to transfer Mr. Derby from the Jail to a mental health/treatment facility pursuant to Judge Grant's order; and

j)  Communicated to Mr. Derby that if he were to "screw up" while in treatment he would be sent back to the Jail, prompting Mr. Derby to go on a hunger strike.

115.

County's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if County had not engaged in the conduct described in the immediately preceding paragraph.

116.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

///

///

///

///

///

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

## FIFTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Correct Care Solutions, LLC)

117.

Defendant CCS owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  CCS breached its duty to Mr. Derby when it:

a) Failed to implement a mental health screening instrument upon intake into the Jail that includes a review of available medical records in order to identify new inmates with serious medical/mental health needs that must be addressed.

b) Failed to have procedures for the administration of necessary anti-psychotic medications that account for the fact that someone suffering from these diseases may offer some resistance to medication.

c) Failed to have qualified mental health professionals on staff at the Jail who could counsel inmates with serious mental health needs about the dangers of not taking medication and their options with respect to medication side effects.

d) Failed to reasonably implement policies for transferring inmates to mental health facilities who are experiencing mental health crises;

e) Failed to implement policies and training for more than shallow, brief, and inconsequential medical checkups for inmates;

f) Failed to provide Mr. Derby reasonable medical and/or mental health treatment, which was most egregious during Mr. Derby's hunger strike and after his suicide attempt;

g) Discontinued Mr. Derby's medication without the approval of a physician; and

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

h) Failed to make reasonable efforts to persuade Mr. Derby to take his medication.

118.

CCS's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if CCS had not engaged in the conduct described in the immediately preceding paragraph.

119.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Chris Hoover)

120.

Officer Hoover owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  Officer Hoover breached his duty to Mr. Derby when he:

a) Advocated for the incarceration of Mr. Derby starting in February 2016 based on Mr. Derby's minor probation violations that were a consequence of his mental illness; and

b) Made numerous false allegations towards Mr. Derby, his attorney, and family in Officer Hoover's statement to the Columbia County Circuit Court prior to Mr. Derby's January 2017 incarceration.

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

121.

Officer Hoover's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if Officer Hoover had not engaged in the conduct described in the immediately preceding paragraph.

122.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Justin Hecht)

123.

Officer Hecht owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  Officer Hoover breached his duty to Mr. Derby when he:

a)  Failed to transfer Mr. Derby from the Jail to a mental health/treatment facility pursuant to Judge Grant's order; and

b)  Communicated to Mr. Derby that if he were to "screw up" while in treatment he would be sent back to the Jail, prompting Mr. Derby to go on a hunger strike.

124.

Officer Hecht's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon

his mother Janice Derby, which never would have happened if Officer Hecht had not engaged in

the conduct described in the immediately preceding paragraph.

125.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount

to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**

**(Negligence)**

**(Against Defendant Nancy Ronan)**

126.

Ms. Ronan owed Mr. Derby a duty to act reasonably and in a manner that would not

foreseeably create unreasonable risks of harm to him.  Ms. Ronan breached her duty to Mr.

Derby when she:

a)  Failed to provide Mr. Derby reasonable medical and/or mental health treatment, which

was most egregious during Mr. Derby's hunger strike and after his suicide attempt;

b)  Discontinued Mr. Derby's medication without the approval of a physician; and

c)  Failed to make reasonable efforts to persuade Mr. Derby to take his medication.

127.

Ms. Ronan's actions created foreseeable risks to Mr. Derby that were realized in Mr.

Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's

suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon

his mother Janice Derby, which never would have happened if Ms. Ronan had not engaged in the

conduct described in the immediately preceding paragraph.

Page 42 – PLAINTIFF'S FIRST AMENDED COMPLAINT

**Johnstun Injury Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

128.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Columbia Community Mental Health)

129.

CCMH owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  CCMH breached its duty to Mr. Derby when it:

a)  Failed to identify Mr. Derby's dire mental health condition caused by circumstances at the Jail at any time prior to June 2017;

b)  Failed to facilitate Mr. Derby's transfer to a mental health facility at any time prior at any time prior to June 2017;

c)  Failed to offer Mr. Derby reasonable mental health services and/or interventions at any time prior to June 2017;

d)  Caused Mr. Derby to be released from Unity Center for Behavioral Health prematurely and against the pleadings of Mr. Derby's family; and

e)  Failed to implement reasonable trainings, policies, and procedures relating to the identification of mentally ill inmates whose mental health declines drastically while at the Jail and how to treat them both inside and outside the Jail.

///

///

Page 43 – PLAINTIFF'S FIRST AMENDED COMPLAINT

130.

CCMH's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if CCMH had not engaged in the conduct described in the immediately preceding paragraph.

131.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Karen Fortlander)

132.

Ms. Fortlander owed Mr. Derby a duty to act reasonably and in a manner that would not foreseeably create unreasonable risks of harm to him.  Ms. Fortlander breached her duty to Mr. Derby when she:

a)  Failed to identify Mr. Derby's dire mental health condition caused by circumstances at the Jail at any time prior to June 2017;

b)  Failed to facilitate Mr. Derby's transfer to a mental health facility at any time prior at any time prior to June 2017;

c)  Failed to offer Mr. Derby reasonable mental health services and/or interventions at any time prior to June 2017; and

Johnstun Injury Law LLC

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

d) Caused Mr. Derby to be released from Unity Center for Behavioral Health prematurely and against the pleadings of Mr. Derby's family.

133.

Ms. Fortlander's actions created foreseeable risks to Mr. Derby that were realized in Mr. Derby's deteriorated mental and physical condition, the attack on Janice Derby, Mr. Derby's suicide attempt, and Mr. Derby's significant loss of freedom and liberty due to his attack upon his mother Janice Derby, which never would have happened if Ms. Fortlander had not engaged in the conduct described in the immediately preceding paragraph.

134.

Accordingly, Ms. Derby is entitled to economic and non-economic damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

112.

Ms. Derby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Derby prays for judgment against all defendants as follows:

1. For economic, noneconomic, and punitive damage in an amount to be proven at trial;

2. For costs of suit and reasonable attorney fees, costs, and expert witness fees pursuant to 42 U.S.C. §§ 1988 and 12205;

3. For pre-judgment and post-judgment interest, as appropriate, on all amounts due to Ms. Derby as a result of this action; and

4. For such other relief as the Court may deem just.

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548

DATED this 12th day of May, 2022.


By *s/ Jacob Johnstun*
Jacob Johnstun, OSB #162146
Email:  johnstun.injury.law@outlook.com
Telephone:  503-410-3572
Facsimile:   503-389-1548

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph:  503.410.3572
Fax: 503.389.1548

CERTIFICATE OF SERVICE

I certify that, on the date indicated below, I caused a true copy of the foregoing to be

faxed to:

Lauren E. Nweze
David C. Lewis
KRAEMER & LEWIS
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (503)763-3875
Facsimile: (503) 763-3901
*Attorneys for Defendants Columbia County,*
*Jeffrey Dickerson, Chris Hoover, and Justin Hecht*

Guy E. Keating
Schulte Anderson Downes Aronson & Bittner, P.C.
811 SW Naito Parkway, Suite 500
Portland, OR 97204
Telephone: (503)223-4131
Facsimile: (503)223-1346
*Attorneys for Defendant Columbia Community Mental*
*Health and Karen Fortlander*

Jacqueline E. Houser
Bruce C. Smith
Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone: (971)712-2800
Facsimile: (971)712-2801
*Attorneys for Wellpath LLC, Nancy Ronan,*
*Julie Weigand, and Vivek Shah, MD*

DATED this 12th day of May, 2022.

By *s/ Jacob Johnstun*
Jacob Johnstun, OSB #162146
Email:  jjohnstun@johnstuninjurylaw.com
Telephone:  503-410-3572
Facsimile:   503-389-1548

**Johnstun Injury
Law LLC**

Johnstun Injury Law LLC
1935 St. Helens Street, Suite A
St. Helens, OR 97051
Ph: 503.410.3572
Fax: 503.389.1548